Hillsborough
No. 92-435

LOUISE MANKOSKI

v.

EDDIE BRILEY

June 24, 1993

█

*Moquin & Daley, P.A.*, of Manchester (*Terrence J. Daley* and *Joni N. Esperian* on the brief, and *Mr. Daley* orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*William S. Orcutt* and *David W. Johnston* on the brief, and *Mr. Johnston* orally), for the defendant.

JOHNSON, J. This is a personal injury case brought by the plaintiff, Louise Mankoski, against the defendant, Eddie Briley, for damages sustained in an automobile accident. Briley admitted liability, and accordingly, the case proceeded solely on the issue of damages. The jury awarded Mankoski $12,500, substantially less than what she requested. She appeals to this court, arguing that the Superior Court (*Dalianis*, J.) erred in ruling that her treating physician, an orthopedic surgeon, was unqualified to testify fully regarding her psychological health. Because we hold that an orthopedic specialist is not *per se* disqualified from rendering an expert opinion on a patient's psychological health, we reverse and remand.

This case involves the application of New Hampshire Rule of Evidence 702, which states:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The rule is a codification of our common law. *See* N.H. R. Ev. 702 reporter's notes. Although it is modeled after Federal Rule of Evidence 702, this court gives opinion evidence "a broader scope than [courts] in other jurisdictions," *id.; see also Rau v. Stores*, 97 N.H. 490, 494, 92 A.2d 921, 924 (1952), and construes the rule liberally, *see Dowling v. Shattuck*, 91 N.H. 234, 236, 17 A.2d 529, 532 (1941). The decision whether to qualify a witness as an expert, however, is left to the sound discretion of the trial court. We do not reverse such a decision unless we find that the trial court clearly abused its discretion. *See Johnston v. Lynch*, 133 N.H. 79, 88, 574 A.2d 934, 939 (1990).

The relevant facts of this case are as follows. On January 2, 1990, Mankoski visited the office of Dr. Richard Hockman, an orthopedic surgeon, and complained of pain in her right shoulder. The doctor diagnosed her as suffering from bursitis. The next day, the accident

engendering this lawsuit occurred. On January 12, 1990, Mankoski kept an appointment with Dr. Hockman that she had made before the accident. She told him she had been experiencing facial, neck, and arm pain since the collision. Thereafter, for approximately one and one-half years, Mankoski continued to seek Dr. Hockman's services, describing headaches, depression, and pain in both shoulders and arms and in her back and neck. The doctor's office notes from this period indicate that Mankoski suffered from serious orthopedic problems, as well as depression. He treated her depression by prescribing Elavil and by referring her to a psychiatrist. He eventually concluded that her various disabilities resulted in a ten percent permanent impairment of her whole body. Mankoski then sued Briley, alleging that his negligence caused her both physical and psychological harm, as well as lost wages.

At trial, Mankoski presented three witnesses to prove her case: Dr. Hockman, her daughter, and herself. The trial court, however, made a pretrial ruling limiting the extent to which Dr. Hockman could testify concerning Mankoski's psychological health. This ruling does not appear in the record, but a later ruling on the issue, made during Dr. Hockman's testimony, was recorded and transcribed. The trial court stated:

> "[Dr. Hockman] wants to tell us that she was depressed. And I understand that is a part that he was dealing with and I don't care if he tells us this; *but as soon as that information gets out, there will be an instruction to the jury that they can't consider this so-called psychological harm component of your damage claim because you are not providing us with a psychiatrist or a psychologist.* So it either comes out and it's taken from them or it doesn't come out. I don't care how you approach it."

(Emphasis added.) Dr. Hockman occasionally testified as to Mankoski's ability to cope with pain, but he omitted any reference to a diagnosis or treatment of depression. Mankoski and her daughter each testified that Mankoski's enjoyment of life had decreased since the accident and that her disposition had changed for the worse.

At the close of the evidence, Mankoski's attorney revisited the trial court's ruling limiting Dr. Hockman's ability to testify about Mankoski's psychological health, and made the following offer of proof:

> "If Doctor [Hockman] had been allowed to testify, your Honor, he would have been able to testify that he has had

medical training at the University of Rochester in terms of the diagnosis of depression. He will also tell you that he had treated many patients who have orthopedic problems who have developed depression as a result thereof and that he is able to diagnose depression and treat it."

Briley's attorney objected, stating that "the court could possibly rule that Doctor Hockman is no expert on depression, clinical or otherwise." The trial court responded as follows:

"I think Dr. [Hockman] was clear what his position was. The plaintiff was certainly free, if she wished, to present a psychological component. She went above and beyond all testimony of that which was submitted from Doctor [Hockman] that she would have needed to do that with the appropriate expert and she chose not to present."

Mankoski's attorney's closing argument contained several references to Mankoski's allegations of psychological harm, and the trial court instructed the jury that it could award Mankoski damages for pain and suffering. Following the jury's $12,500 award, Mankoski appealed.

██ ██ The first step in our analysis is to examine the ruling at issue. As Briley points out, Mankoski bears the burden of providing us with an adequate record from which we can determine whether the trial court did, in fact, abuse its discretion. *See Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115, 480 A.2d 43, 44 (1984). While Briley concedes that the trial court made a ruling forbidding Dr. Hockman from testifying as to certain aspects of Mankoski's psychological health, he contends that the exact nature and basis of the ruling do not appear in the transcript prepared for this appeal. We disagree. Although much of the discussion on the issue is unclear or incompletely recorded, the excerpts set forth above provide the needed explanation for the ruling. Twice the trial court stated, in effect, that Mankoski could not present the psychological component of her damages claim through the testimony of Dr. Hockman because he was not "the appropriate expert." That is, because Dr. Hockman was not a psychiatrist or psychologist, the trial court ruled that he was unqualified to testify as an expert on Mankoski's psychological health. This was a clear abuse of discretion.

 An orthopedic surgeon is not *per se* unqualified to render expert testimony on the psychological health of a patient. "While the [trial] court may rule that a certain subject of inquiry requires that a

member of a given profession, as a doctor, an engineer, or a chemist be called[,] usually a specialist in a particular branch within a profession will not be required." 1 K. BROUN ET AL., MCCORMICK ON EVIDENCE § 13, at 55 (J. Strong ed., 4th ed. 1992); *see also Quinton v. Farmland Industries, Inc.*, 928 F.2d 335, 337 (10th Cir. 1991); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir. 1985); *United States v. Dysart*, 705 F.2d 1247, 1251–52 (10th Cir.), *cert. denied*, 464 U.S. 934 (1983); *Wolfinger v. Frey*, 223 Md. 184, 189–90, 162 A.2d 745, 748 (1960); *Letch v. Daniels*, 401 Mass. 65, 68, 514 N.E.2d 675, 676–77 (1987); *Seawell v. Brame*, 258 N.C. 666, 670, 129 S.E.2d 283, 287 (1963). Although a medical degree does not automatically qualify a witness "to give an opinion on every conceivable medical question," *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1113 (5th Cir. 1991), *cert. denied*, — U.S. —, 112 S. Ct. 1280 (1992), neither does the *lack* of specialization in a particular medical field automatically *dis*qualify a doctor from testifying as an expert in that field. An individual witness's qualifications must be determined on a case-by-case basis, not by application of a *per se* rule of exclusion or inclusion. "The trial judge cannot . . . make a determination as to admissibility without investigating the competence the particular proffered expert would bring to bear on the issues. Only then will the judge be able to decide whether the test of Rule 702 — assistance to the trier of fact — has been satisfied." 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[04], at 702–49 (1992); *see Jenkins v. United States*, 307 F.2d 637, 644 (D.C. Cir. 1962).

 Once the trial court determines an individual's particular qualifications, we grant deference to the court's determination that the witness is or is not qualified to testify as an expert. But where the trial court decides a witness is unqualified without first investigating the witness's background, we will reverse if the record reveals an adequate offer of proof on the issue. Here, we hold that the trial court made its determination without sufficiently investigating Dr. Hockman's qualifications. Because Mankoski made an adequate offer of proof that the doctor's lack of specialization in psychiatry belied his actual expertise, we hold that the trial court should have conducted a *voir dire* of the doctor to determine his true qualifications.

Briley contends that any error was harmless because Mankoski testified about her psychological health, and because Dr. Hockman's testimony established a causal link between Briley's negligence and Mankoski's physical injuries. *See* N.H. R. EV. 103(b). We disagree. A

jury is likely to give much more weight to the opinion of an expert witness than to the self-serving testimony of a party to the lawsuit. Consequently, on the issue of Mankoski's psychological health, the trial court's ruling deprived Mankoski of testimony that would have aided the jury in fairly assessing the full extent of her damages. Moreover, because Dr. Hockman spoke at length concerning Mankoski's physical impairments and their probable connection to Briley's negligence, the jury may have interpreted his silence on the question of Mankoski's alleged depression to the prejudice of her case. Accordingly, we hold that the trial court's error affected a substantial right of Mankoski, *see id.*, and we reverse and remand for a new trial.

*Reversed and remanded.*

All concurred.