Hillsborough-northern judicial district
No. 93-343

APRIL CHASE

v.

MARY HITCHCOCK MEMORIAL HOSPITAL & a.

December 19, 1995

*James M. Winston*, of Manchester, by brief and orally, for the plaintiff.

*McNeill & Taylor, P.A.*, of Dover, (*Malcolm R. McNeill, Jr.* and *Lynne M. Dennis* on the brief, and *Mr. McNeill* orally), for the defendants.

HORTON, J. The plaintiff, April Chase, brought a multi-count negligence action against the defendants, Mary Hitchcock Memorial Hospital and Doctors William Young, Barry Smith, and John Ketterer, following the induced delivery and subsequent death of the plaintiff's immature fetus. After an eight-day trial, the jury returned verdicts in favor of the defendants. The plaintiff appeals, arguing that the ruling of the Superior Court (*Lynn*, J.) limiting the testimony of the plaintiff's medical expert was reversible error. We affirm.

This case arose after the plaintiff was treated for severe bleeding associated with her pregnancy. After attempts to control the bleeding were unsuccessful, the plaintiff was transported by helicopter from Catholic Medical Center in Manchester to Mary

Hitchcock Memorial Hospital. There the plaintiff was diagnosed with placenta previa, and delivery was induced. The infant died after fifty-six minutes. The plaintiff sued the hospital and several doctors alleging negligence and, on behalf of the infant, wrongful death.

Prior to trial, the defendants moved *in limine* to limit the testimony of the plaintiff's medical expert, Dr. Glenn W. Bricker. Superior Court Judge Sullivan held two hearings to determine Dr. Bricker's qualifications and, in an order, granted the motion in part but ruled that Dr. Bricker would be allowed to testify as a medical expert generally. Thereafter, Judge Lynn, the trial judge, ruled that Judge Sullivan's order limiting Dr. Bricker's testimony would be followed at trial. On appeal, the plaintiff argues that Dr. Bricker was improperly precluded from furnishing medical opinions as to (1) the salvageability of the plaintiff's pregnancy, (2) the viability of the plaintiff's baby, and (3) whether resuscitative measures could have saved the baby's life.

The plaintiff argues that in issuing the limiting order, Judge Sullivan abused his discretion by ignoring Dr. Bricker's experience with pregnancies, by stressing Dr. Bricker's lack of research of texts and treatises and his nonreliance on statistics, and by ignoring the critical facts upon which Dr. Bricker based his opinion. The plaintiff also argues that Judge Lynn abused his discretion by failing to consider any education, research, or training in which Dr. Bricker might have engaged during the eight months between Judge Sullivan's limiting order and the time of trial. We first address Judge Sullivan's order.

■ The determination of whether particular expert testimony is reliable and admissible rests within the sound discretion of the trial court. *State v. Cressey*, 137 N.H. 402, 405, 628 A.2d 696, 698 (1993).

> Once the trial court determines an individual's particular qualifications, we grant deference to the court's determination that the witness is or is not qualified to testify as an expert. But where the trial court decides a witness is unqualified without first investigating the witness's background, we will reverse if the record reveals an adequate offer of proof on the issue.

*Mankoski v. Briley*, 137 N.H. 308, 313, 627 A.2d 578, 581 (1993).

■ In regard to the first medical opinion excluded, testimony on the salvageability of the plaintiff's pregnancy, Judge Sullivan ruled as follows:

The court finds that Dr. Bricker has no experience or training which qualifies him as an expert in the treatment of placenta previa and that he is not familiar with the texts, studies, case reports, or other literature on the subject. He is not qualified to testify as an expert on the treatment of placenta previa and his opinion on the subject would not be of assistance to the jury. This is not the type of matter [about which] Dr. Bricker, as a general practitioner without hospital privileges since 1973 and with no experience in this field during the past twenty years, has the regular medical training and general knowledge that would permit him to testify as an expert, especially where he has done no research on the subject to educate himself as an expert.

In reaching his decision, Judge Sullivan relied primarily on Dr. Bricker's *voir dire* testimony. Judge Sullivan noted:

Dr. Bricker testified that he had not handled a single placenta previa case since 1973. He also testified that in this case the plaintiff had a case of total placenta previa, not partial placenta previa. Dr. Bricker testified that he had only handled one case of total placenta previa in his career and that was prior to 1973. Dr. Bricker testified that in rendering his opinion that the defendants should have undertaken other procedures to attempt to stop the bleeding before inducing the termination of the pregnancy, he did not rely on any texts, statistical studies, articles or case reports. He testified that he made no attempt to educate himself on the issues of this case by researching the medical literature before he rendered his opinion.

Judge Sullivan addressed the second and third medical opinions excluded, the viability of the plaintiff's baby and whether resuscitative measures could have saved the baby's life, together as follows:

[T]he court finds that Dr. Bricker is not qualified to testify that in his opinion there were procedures available to the defendants that might have saved the fetus's life and that if additional procedures had been utilized, the fetus probably would have survived. Dr. Bricker testified that he had no experience in delivering premature or preterm babies after 1970. According to Dr. Bricker he testified the smallest child he delivered was 4 pounds. The plaintiff's fetus in this case was less than 13 ounces at birth. The court finds that Dr. Bricker has no practical experience in treating neonates

of the age and size involved in this case. He testified that he had no training in neonatology. Dr. Bricker also testified that he relied on and reviewed no texts, statistical studies, case reports or discussions with peers in arriving at his opinion that there were procedures available to the defendants that might have saved the fetus's life or that if additional procedures had been utilized, the fetus would have probably survived. As indicated above, Dr. Bricker testified that he made no attempt to educate himself on the issues of this case by researching the medical literature. Dr. Bricker's opinion that there were procedures available to the defendants that might have saved the fetus's life and if additional procedures had been utilized the fetus would have probably survived is not based upon his experience, training, texts, statistical studies, case reports, medical literature or peer discussions. The court reviewed Dr. Bricker's deposition. Dr. Bricker showed in his deposition a lack of knowledge concerning the viability of a 20 to 21 week old fetus. . . . Because of Dr. Bricker's lack of expertise and knowledge in this extremely technical area of medicine, the court finds that his opinion on the subject would not be of assistance to the jury. This is not the type of matter that Dr. Bricker, as a general practitioner without hospital privileges since 1973 and with no experience in this field during the past twenty years, has the regular medical training and general knowledge that would permit him to testify as an expert, especially where he has done no research on the subject to educate himself as an expert.

The plaintiff's challenge to Judge Sullivan's order is without merit. In *Mankoski v. Briley*, 137 N.H. at 312, 627 A.2d at 581, we reversed a trial judge's ruling excluding the testimony of the plaintiff's medical expert. We stated that

[a]lthough a medical degree does not automatically qualify a witness to give an opinion on every conceivable medical question, neither does the lack of specialization in a particular medical field automatically disqualify a doctor from testifying as an expert in that field. An individual witness's qualifications must be determined on a case-by-case basis, not by application of a *per se* rule of exclusion or inclusion.

*Id.* at 313, 627 A.2d at 581 (quotation and emphasis omitted). We found that the trial judge made his determination without adequately investigating the doctor's true qualifications and that the

trial judge should have conducted a *voir dire* of the doctor to determine those qualifications. *Id.*

In contrast, Judge Sullivan's investigation into Dr. Bricker's qualifications was more than adequate. Judge Sullivan conducted two separate and lengthy *voir dire* hearings, thoroughly reviewed Dr. Bricker's testimony and deposition, and issued a detailed order explaining his findings. Moreover, Judge Sullivan ruled that Dr. Bricker was qualified to testify on several other important medical issues. The court found admissible Dr. Bricker's opinion that a doctor should have been present at the time of delivery to assess the viability of the fetus, that the defendants breached the standard of care owed the plaintiff by being insensitive to the impact on the plaintiff arising out of the death of her infant, that the treatment accorded the plaintiff was substandard and caused her mental and emotional harm, and that the plaintiff suffered physical symptoms as a result of her mental and emotional distress. In allowing this testimony, Judge Sullivan noted that Dr. Bricker had been a practicing family physician for the past thirty-nine years, having delivered nearly 1,000 babies in that time.

We hold that Judge Sullivan's order limiting Dr. Bricker's testimony was not an abuse of discretion and that the plaintiff failed to meet her burden to qualify her own expert. *See* N.H. R. EV. 702; *State v. Coleman*, 133 N.H. 713, 715, 584 A.2d 755, 757 (1990).

We next address Judge Lynn's refusal to rescind Judge Sullivan's order limiting Dr. Bricker's testimony. The plaintiff argues that Judge Lynn failed to take into consideration any education, research, or training in which Dr. Bricker might have engaged during the eight months between Judge Sullivan's limiting order and the time of trial. The plaintiff's assertion is factually incorrect.

■■ The discretionary powers of the trial court are continuous and may be exercised any time prior to final judgment. *See State v. Poirier*, 136 N.H. 477, 479-80, 617 A.2d 653, 655 (1992). The review of interlocutory rulings takes place at the discretion of the trial judge. *Id.*

Prior to trial, but after Judge Sullivan issued his limiting order, the defendants submitted interrogatories to the plaintiff asking the plaintiff to provide to the defendants a statement of Dr. Bricker's efforts at research, continuing education, and self-study in preparation for the trial. In addition, the plaintiff's counsel asked Dr. Bricker to "participate in whatever medical investigation, et cetera, as would help him to be in compliance with the court's order, still not agreeing with the court's order, but asking him to bring himself up to par with the court's order."

In response to the interrogatories and Judge Sullivan's order, Dr. Bricker submitted a "formal report" in which he described his research efforts in connection with this case. The report consists of a one-page letter addressed to the plaintiff's counsel. Dr. Bricker reported that he performed a search of the data base at the National Library of Medicine and found nothing inconsistent with his expressed opinions on placenta previa. He also reported that he was unable to find any statistics published prior to 1986 on the issue of low birth weight infants. In addition, he reviewed a New England Journal of Medicine article entitled *Outcome of Extremely-Low-Birth-Weight Infants Between 1982 and 1986* and read three pages in the book PARENT-INFANT BONDING. Finally, Dr. Bricker reported that he discussed two cases involving extremely low birth weight infants who survived, one with a doctor in Florida, and the other with a doctor in Illinois.

The record indicates that Judge Lynn examined Dr. Bricker's report and concluded that Judge Sullivan's order would remain in place. Judge Lynn found that Dr. Bricker's efforts as set forth in his report did not "overcome any of the . . . numerous problems that . . . Judge Sullivan pointed out." Judge Lynn further pointed out that if the little extra work Dr. Bricker had done was enough to qualify him as an expert in this case, any person who "just sat down and did the same amount of reading . . . [could] testify as an expert even though [he or she] had no experience in the hospital . . . in over twenty years."

We conclude that Judge Lynn adequately considered the circumstances as they existed at the time of trial and properly let stand Judge Sullivan's order. Accordingly, the jury verdicts are affirmed.

*Affirmed.*

THAYER and BRODERICK, JJ., did not sit; JOHNSON, J., concurred; BROCK, C.J., dissented.

BROCK, C.J., dissenting: In my view, Dr. Bricker was eminently qualified to testify as a medical expert in this case, and the trial court abused its discretion in limiting his testimony as it did.