Hillsborough-northern judicial district
No. 96-375

### JOYCE BISSETT, EXECUTRIX OF THE ESTATE OF FLORENCE MERCHANT

v.

### THEODORE RENNA, M.D.

May 19, 1998

*Stanton E. Tefft*, of Bedford, by brief and orally, for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Marc R. Scheer* and *Jennifer L. Murphy* on the brief, and *Mr. Scheer* orally), for the defendant.

HORTON, J. The plaintiff, Joyce Bissett, executrix of the estate of Florence Merchant, brought a medical malpractice action against the defendant, Theodore Renna, M.D., seeking recovery for injuries resulting from the defendant's alleged negligence in prescribing a certain drug to the decedent. The Superior Court (*Lynn*, J.) granted the defendant's motion to dismiss on the grounds that the plaintiff failed to provide competent expert testimony. *See* RSA 507-E:2 (1997). We affirm.

The defendant is a board-certified ophthalmologist. In June 1988, he performed cataract surgery on Ms. Merchant. Shortly after the surgery, she developed an inflammation of the retina known as cystoid macula edema (CME). The defendant prescribed Feldene, a non-steroidal anti-inflammatory drug (NSAID), to treat Ms. Merchant's eye inflammation.

In February 1991, Ms. Merchant filed this medical malpractice action, alleging that the defendant negligently prescribed Feldene. In August 1992, Ms. Merchant died, and her executrix was substituted as plaintiff. The plaintiff contended that the Feldene caused Ms. Merchant to experience severe gastrointestinal bleeding and to develop aplastic anemia, which then became leukemia and ultimately led to her death. The defendant moved to dismiss, arguing that the plaintiff failed to produce a qualified and competent expert witness to testify to the appropriate standard of care required of the defendant.

At an initial hearing on the defendant's motion to dismiss, the plaintiff revealed that she intended to offer expert testimony through a pharmacologist, Dr. David Kosegarten. The Superior Court (*Lynn*, J.) denied the defendant's motion to dismiss but ordered a pretrial hearing to determine Dr. Kosegarten's competency to testify as an expert witness. After the hearing, the Superior Court (*Barry*, J.) ruled that Dr. Kosegarten was not competent to testify as the plaintiff's sole liability expert witness under RSA 507-E:2. Specifically, the court found:

1. [Dr. Kosegarten] is not a competent witness with regard to the standard of care required of the defendant.

2. He is not a competent witness capable of testifying to the standard of reasonable professional practice in the defendant's profession at the time of the incident giving rise to this action;

3. He cannot testify that the [defendant] failed to act in accordance with such standard since he does not know what the standard is and, therefore;

4. He cannot testify that as a proximate result thereof, [Ms. Merchant] suffered injuries which would not have otherwise [] occurred.

At a hearing on the defendant's renewed motion to dismiss, the plaintiff contended that she had sufficient evidence to reach the jury based on an article in the PHYSICIAN'S DESK REFERENCE (PDR) which indicated that the administration of Feldene to treat the plaintiff's CME was an "off-label" use of the drug, *i.e.*, a use that had not been approved by the Food and Drug Administration (FDA). The plaintiff asserted that the PDR entry conclusively shows that the defendant inappropriately prescribed and ineffectively managed Ms. Merchant's use of Feldene, which caused her injuries. The plaintiff argued that the PDR established either evidence of the applicable standard of care required of the defendant or *prima facie* proof of the defendant's breach of that standard.

On May 2, 1996, the Superior Court (*Lynn*, J.) dismissed the case. The court found that RSA 507-E:2 does not permit the PDR, absent expert testimony, to be used as *prima facie* proof of the standard of care required of the defendant in administering Feldene to Ms. Merchant. The court noted that while the PDR may be admissible when offered in conjunction with expert testimony, in light of Judge Barry's determination that the plaintiff's only liability witness is

not a competent expert witness, the court had no alternative but to grant the defendant's motion to dismiss.

On appeal, the plaintiff argues that the trial court erred in ruling that Dr. Kosegarten is not competent to testify as an expert witness concerning the applicable standard of care. In addition, the plaintiff contends that RSA 507-E:2 permits the PDR, absent expert testimony, to serve as *prima facie* proof of the applicable standard of care. The plaintiff maintains that use of the PDR to establish the standard of care regarding the prescription of an off-label drug, either alone or in conjunction with Dr. Kosegarten's testimony that a breach of that standard has occurred, is sufficient to shift the burden of proof to the defendant to justify his prescription of such drug.

■ RSA 507-E:2 governs the burden of proof in medical malpractice actions. The statute provides, in pertinent part:

I. In any action for medical injury, the plaintiff shall have the burden of proving by affirmative evidence which *must include expert testimony of a competent witness or witnesses*:

(a) The *standard of reasonable professional practice in the medical care provider's profession or specialty* thereof, if any, at the time the medical care in question was rendered; and

(b) That the medical care provider failed to act in accordance with such standard; and

(c) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

(Emphasis added.) The decision whether to qualify a witness as an expert is within the sound discretion of the trial court. *See Chase v. Mary Hitchcock Mem. Hosp.*, 140 N.H. 509, 510, 668 A.2d 50, 52 (1995). We will not reverse such a decision unless the trial court clearly abused its discretion. *See Mankoski v. Briley*, 137 N.H. 308, 310, 627 A.2d 578, 579 (1993).

■ First, the plaintiff argues that a pharmacologist may competently testify as an expert witness concerning the standard of care required of a medical doctor in prescribing certain drugs. The defendant's administration of Feldene to treat the plaintiff's eye condition, however, is subject to the standard of care analysis

mandated by RSA 507-E:2. The statute requires the plaintiff to prove by competent expert testimony the standard of care required of the defendant at the time the medical care was rendered, that the defendant failed to act in accordance with such standard, and that as a proximate result, Ms. Merchant suffered injuries which she would not otherwise have sustained. *See* RSA 507-E:2.

■ The plaintiff's proposed use of a pharmacologist, rather than a medical doctor, to testify to the standard of care required of the defendant ophthalmologist contravenes the requirements of RSA 507-E:2. For example, Dr. Kosegarten testified at the pretrial hearing that he did not have a medical degree and had received no training in the medical fields of ophthalmology or hematology. He also acknowledged that he had no experience treating patients with CME, and that he had never encountered the disease prior to being retained as a consultant in this case. In addition, Dr. Kosegarten testified that he had not performed any independent medical research relating to the treatment of CME by the use of Feldene.

Dr. Kosegarten further testified that he did not consider himself qualified to testify to the standard of care expected of an ophthalmologist in the defendant's position. He admitted that because he was not an ophthalmologist, he could not comment on the proper treatment for Ms. Merchant's condition in the summer of 1988, and he could not evaluate all of the risks and benefits of the course of treatment available to the defendant at that time.

In light of Dr. Kosegarten's own admission that he is unfamiliar with the standard of care required of the defendant, the trial court did not abuse its discretion in ruling that he could not serve as the plaintiff's sole liability expert. We agree that he is not qualified to testify as an expert witness to the standard of care expected of an ophthalmologist in the defendant's position. The plaintiff failed to meet her burden under the first prong of RSA 507-E:2. *Cf. Chase*, 140 N.H. at 511-13, 668 A.2d at 52-53.

Second, the plaintiff contends that use of the PDR, either by itself or in conjunction with the testimony of Dr. Kosegarten, will suffice to establish the standard of care required of the defendant. We disagree.

The PDR is an annual publication containing pharmaceutical product information provided by drug manufacturers and approved by the FDA. *See* Annotation, *Medical Malpractice: Drug Manufacturer's Package Insert Recommendations as Evidence of Standard of Care*, 82 A.L.R.4TH 166, 171 n.3, 173 (1990). The information contained in the PDR is nearly identical to that found in the drug

package insert sheet. *See id.* at 171 n.3. The insert sheet is derived from data the manufacturer has presented to the FDA as proof that the drug is safe and effective for the uses for which the manufacturer intends to market the drug. *See id.* at 173. The insert informs the physician of "(1) the conditions under which the drug should be prescribed; (2) the disorders it is recommended to relieve; (3) the precautionary measures which should be observed; and (4) warnings of adverse effects that may result." *Id.* A PDR entry typically includes the "trade and chemical names of the drug, a description of the drug, indications and contraindications for its use, warnings, adverse reactions, administrations and dosage, and information on managing and adjusting the dosage of the drug." *Id.* at 173-74.

■ We find that the PDR, by itself, is insufficient to establish the standard of care required of the defendant. *See* RSA 507-E:2, I(a). RSA 507-E:2 clearly requires the plaintiff to produce expert testimony of a competent witness regarding the standard of care applicable to the defendant. The general rule in medical malpractice cases is that the standard of care in the medical care provider's profession or specialty, if any, at the time the medical care in question was rendered must be established through expert testimony. *See* RSA 507-E:2; *cf. Durocher v. Rochester Equine Clinic,* 137 N.H. 532, 535, 629 A.2d 827, 829 (1993); *Thorpe v. State,* 133 N.H. 299, 304, 575 A.2d 351, 353-54 (1990) (noting general rule in medical malpractice cases is that proximate cause between negligence and injury must be established through expert testimony). An exception to this requirement may exist in cases where the evidence rests on "nontechnical matters or those of which an ordinary person may be expected to have knowledge." *Mehigan v. Sheehan,* 94 N.H. 274, 275-76, 51 A.2d 632, 633 (1947) (quotation omitted); *see also Bronson v. The Hitchcock Clinic,* 140 N.H. 798, 810, 677 A.2d 665, 673 (1996) (Horton, J., dissenting); *Beane v. Perley,* 99 N.H. 309, 310, 109 A.2d 848, 849 (1954). *But see* RSA 507-E:2, I (requiring expert testimony to establish requisite standard of care in medical malpractice actions). In this case, however, an average jury member is unlikely to possess sufficient knowledge regarding the standard of care required of an ophthalmologist in the defendant's position without expert testimony.

Accordingly, the trial court did not err in ruling that Dr. Kosegarten was not competent to testify to the standard of care required of the defendant. The trial court also appropriately ruled that RSA 507-E:2 does not permit the PDR, absent expert testimony, to serve as *prima facie* proof of the standard of care required

794

of the defendant. Because the plaintiff failed to produce a competent expert witness to testify to the standard of care, the trial court properly dismissed the case.

We have reviewed the record with respect to counsel's remaining arguments and find them to be without merit, warranting no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.