Grafton
No. 98-719

THE STATE OF NEW HAMPSHIRE

v.

PAUL SANTAMARIA

July 5, 2000

*Philip T. McLaughlin*, attorney general (*Kelly A. Ayotte*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Office*, of Chichester (*Paul Twomey* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Paul Santamaria, appeals his conviction in the Superior Court (*Smith*, J.) of one count of first degree assault in violation of RSA 631:1 (1996) following a jury trial. The defendant challenges the sufficiency of the evidence and whether the court erred in permitting a police officer to testify as an expert witness. We affirm.

Viewed in the light most favorable to the State, the evidence would support the following factual findings. While attending a party at his fraternity, the victim overheard the defendant make a sexual comment to a group of girls. The victim ascertained that the defendant was not a member of the fraternity. He then approached the defendant and said, "I heard you are a high school student. If you are, you are going to have to leave." The defendant responded, "Who the f— are you?" Because the defendant was not a member of the fraternity, the victim told him, "You are going to have to leave or else you are going to get your a– kicked." The victim also said, "What I meant to tell you is a number of people are going to kick your a–." The defendant testified that he responded by saying, "I may leave, but you are not going to kick my a–." Approximately five seconds later, the victim grabbed the defendant by his shirt. The defendant responded by bringing his left hand to the back of, and around the front of, the victim's neck. As the defendant's hand reached toward his neck, the victim observed that the defendant was holding a "yellow, orange-ish object." Immediately thereafter, the victim felt a severe burn on the back of his neck. He then said to the defendant, "You cut me." The victim testified that, prior to being cut, he did not punch the defendant and had not brandished any kind of weapon.

The victim was taken to the local emergency room. At the hospital, Officer Tanner of the Plymouth Police Department interviewed him and photographed his injuries. The victim received thirty-eight stitches on his neck. Officer Tanner was unable to locate the instrumentality that cut the victim's neck. The defendant was charged with one count of first degree assault in violation of RSA 631:1.

At trial, the State called Officer Tanner to testify. Officer Tanner was qualified as an expert to testify as to the cause of the injury. He then read from a doctor's report that described the injury as "[l]ateral in aspect, five inches, full thickness involves skin and subdermal tissue only. Wound is clean with minimal bleeding."

On direct examination, Officer Tanner testified that based upon his observation, it appeared that a sharp knife made the wound. On cross-examination, however, Officer Tanner testified that the sharp clean cut was not necessarily caused by a knife. Rather, "any sharp implement" could have caused the victim's injury.

The defendant testified at trial and admitted to possessing an object, a computer tool, that he believed may have been the instrumentality that cut the victim. A witness testified that after the victim asked the defendant to leave, the defendant became aggressive toward the victim. The jury found the defendant guilty. The defendant appeals.

To convict the defendant of assault with a deadly weapon, the State must prove beyond a reasonable doubt that he "[p]urposely or knowingly cause[d] bodily injury to another by means of a deadly weapon . . . ." RSA 631:1, I(b). Here, the indictment alleged that the defendant knowingly caused "bodily injury to another by means of a deadly weapon, in that the Defendant cut [the victim's] neck with a knife . . . ." The defendant contends that because the indictment alleged use of a specific type of weapon, the State had to prove beyond a reasonable doubt that a knife was used. In response, the State contends that the defendant failed to raise this issue below and it is therefore not preserved on appeal. In addition, the defendant argues that there was insufficient evidence to establish that a knife was in fact the deadly weapon used.

■ We hold that the defendant waived any argument that the State was required to prove that the deadly weapon involved in the assault was a knife. The court instructed the jury that the State had the burden to prove each element of the charge of first degree assault beyond a reasonable doubt. As to what constitutes a deadly weapon, the jury was instructed that "[d]eadly weapon includes any

firearm, knife, or other substance or thing which in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." The defendant did not object to this instruction, and therefore he cannot now argue that the State was required to prove that a knife was used in the assault. *See State v. Lurvey*, 122 N.H. 190, 192, 442 A.2d 592, 593 (1982). Thus, the defendant's argument that there was insufficient evidence to establish that a knife was involved is moot because the State was required to prove only that a deadly weapon was used. Moreover, the jury had the right to conclude from the evidence that a knife, in fact, had been used. It did not have to accept the defendant's testimony that the injury was caused by the computer tool that he produced for the first time at trial.

We next address the defendant's contention that the evidence was insufficient to support a finding that he did not act in self-defense. "[W]hen evidence of self-defense is admitted, conduct negating the defense becomes an *element* of the charged offense, which the State must prove beyond a reasonable doubt." *State v. McMinn*, 141 N.H. 636, 645, 690 A.2d 1017, 1023 (1997) (citations omitted).

> Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt. Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided that they can be reasonably drawn therefrom. The State need not prove each evidentiary fact beyond a reasonable doubt, but, rather, the decisive issue is whether on all the evidence, guilt has been established beyond a reasonable doubt.

*State v. Stauff*, 126 N.H. 186, 189, 489 A.2d 140, 142 (1985) (citations, quotations, and brackets omitted).

> Because the evidence on the issue of self-defense was conflicting, the jury had to evaluate the credibility of the various witnesses before reaching a verdict, and we will not review the jury's decision on the credibility of the witnesses. Our task is only to determine the sufficiency of the evidence. We must uphold the verdict unless we find that, in viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, no reasonable fact-finder could find that the defendant did not act in self-defense.

*State v. McAvenia*, 122 N.H. 580, 582, 448 A.2d **967**, 968 (1982) (citation omitted).

Evidence was adduced from which the jury could have found that the defendant initially provoked the victim verbally: the rude comments made by the defendant in the victim's presence; witness testimony that after the victim asked the defendant to leave, the defendant became aggressive toward him; and the defendant having said to the victim, "Who the f-- are you?" *See State v. Gorham*, 120 N.H. 162, 164, 412 A.2d 1017, 1019 (1980) (recognizing that one may be provoked by words alone). After being verbally provoked, the victim responded in kind and grabbed the defendant's shirt, but did not push him. The victim testified that he remained an arm's length distance from the defendant. A reasonable jury could find that the victim's conduct constituted non-deadly force. In fact, he denied having attacked the defendant. It is undisputed that he was unarmed. He then was cut to the point that he required thirty-eight stitches. The defendant conceded that he believed that a tool in his possession was the instrumentality that cut the victim.

■ In light of the defendant's concession, the jury could have found that the altercation escalated into one involving deadly force. It was reasonable for the jury to conclude that the defendant was not justified in using deadly force because it could conclude that there was no reason for him to believe that the victim was "about to use unlawful, deadly force against" him. *See* RSA 627:4, II(a) (1996). "We cannot say on the record before us that it was unreasonable for the jury to resolve the conflicting testimony in favor of the State, and we cannot say that no reasonable trier of fact could find that the assault was not in self-defense." *McAvenia*, 122 N.H. at 582, 448 A.2d at 969.

Finally, we turn to the defendant's argument that the court erred in allowing Officer Tanner to testify as an expert witness where: (1) he had not previously been identified to the defense as an expert witness; (2) the record did not indicate that he had sufficient training in order to justify his opinion that the cut was made by a knife or any other sharp instrumentality; and (3) the officer had no basis for his opinion that the cut was made by a knife. The State contends that because the defendant did not raise the issue of notice nor did he challenge the underlying methodology or basis of the officer's opinion at trial, these issues are not preserved for our review.

■ The defendant does not point us to, and we are unable to find, where in the record the issue of notice was raised at trial. We

therefore agree with the State that the issue of notice was not preserved for our review. *See McMinn,* 141 N.H. at 642, 690 A.2d at 1021 ("contemporaneous and specific objection is required to preserve an issue for appellate review").

We do conclude, however, that the issues of Officer Tanner's qualifications and the basis for his opinion are preserved for our review. The defendant objected to the officer's opinion that the fact that the wound appeared to be a clean cut indicated that the cut was made by a sharp knife. While the defendant conceded that the officer was qualified to "testify that it was a clean cut," he questioned whether the officer could identify what instrumentality caused the cut. The State then questioned Officer Tanner regarding his qualifications to offer such testimony. Defense counsel again objected when the officer opined that, from looking at the victim's wound, the type of instrumentality that caused the wound "appeared . . . to be a sharp knife." We conclude that the defendant's objections were sufficient to preserve this issue for our review.

Having concluded that the issue is preserved, we now turn to the substance of the defendant's argument. The admission of expert testimony is governed by New Hampshire Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Subsumed in Rule 702 is the premise that expert testimony must be reliable in order to be admissible, and "the determination of whether particular expert testimony is reliable and admissible rests within the sound discretion of the trial court." *State v. Hammond,* 144 N.H. 401, 406, 742 A.2d 532, 537 (1999) (citation, quotation, and brackets omitted). Because the decision whether to qualify a witness as an expert is left to the trial court's sound discretion, this court will not reverse such a decision unless we find that the trial court clearly abused its discretion. *Mankoski v. Briley,* 137 N.H. 308, 310, 627 A.2d 578, 579-80 (1993).

At the outset, we note that the question of whether Officer Tanner's testimony necessitated him being qualified as an expert is not raised on appeal. We therefore turn to the defendant's contention that no evidence was adduced to establish that the officer was qualified to determine whether a clean cut was made by a sharp instrumentality or a knife. We address each in turn.

■ Evidence was presented that the officer's qualifications include: (1) training at homicide investigation schools where they "touched on different types of trauma, and [he saw] numerous photos or slides of different types of trauma, depicting what caused the different types of trauma" and the instrumentalities causing them; (2) observing cuts made with both sharp and dull instrumentalities; and (3) training enabling him to form an opinion as to what kind of instrumentality made a particular kind of wound. Based on his expertise, the officer testified as to whether a sharp instrumentality inflicted the wound in issue. Although the State's expert never professed to have medical training, he was familiar with injuries from sharp instrumentalities and could offer an opinion as to whether a sharp object caused the victim's wound. "In this State . . . evidence does not have to be infallible to be admissible." *State v. Arsenault*, 115 N.H. 109, 111, 336 A.2d 244, 246 (1975) (brackets and quotation omitted). Furthermore, "[t]hat there are other possible causes of the injur[ies] goes to the weight of the opinion, not to its admissibility." *State v. McClary*, 541 A.2d 96, 102 (Conn. 1988). In light of the officer's qualifications, it can hardly be said that the trial court abused its discretion in permitting him to testify that a sharp instrumentality caused the injury. *See Mankoski*, 137 N.H. at 310, 627 A.2d at 579 (holding this State gives opinion evidence a broader scope than other jurisdictions and construes Rule 702 liberally).

The defendant argues that he was prejudiced by the officer's testimony because it provided the only evidence submitted that the injury was caused by a sharp knife. We need not address this issue because the issue of whether the State needed to prove a knife caused the injury, as alleged in the indictment, is not properly before us on appeal. The State needed to prove only that a deadly weapon was used. Neither the defendant's brief nor his notice of appeal, other than by passing reference, *see State v. Haines*, 142 N.H. 692, 699, 709 A.2d 762, 766 (1998) (court will not devote appellate resources to issues that receive only passing reference in brief), raise the argument that the computer tool did not constitute a deadly weapon. We therefore assume for the purposes of this appeal that it is.

The officer's opinion that a sharp knife caused the injury was not the only evidence by which the State established a deadly weapon was involved. Additional evidence was adduced that the victim sustained a cut necessitating thirty-eight stitches; the defendant admitted that he believed he cut the victim with an object in his pocket; immediately after the defendant put his hands around the

victim's neck, the victim said, "You cut me"; and the defendant conceded that the officer could testify that the wound was a clean cut. In addition, the jury viewed photographs of the wound.

 Finally, the defendant faults the trial court for permitting Officer Tanner to testify because, according to the defendant, Officer Tanner provided no basis for his opinion. "Objections to the basis of an expert's opinion go to the weight to be accorded the opinion evidence, and not to its admissibility. The appropriate method of testing the basis of an expert's opinion is by cross-examination of the expert." *Tullgren v. Phil Lamoy Realty Corp.*, 125 N.H. 604, 609-10, 484 A.2d 1144, 1148 (1984) (citation omitted). Here, the defendant had ample opportunity to cross-examine Officer Tanner on the basis of his opinion that a sharp instrumentality or knife caused the victim's injury. This cross-examination allowed the defendant to test the weight that the officer's opinion should be given by demonstrating Officer Tanner's familiarity or lack thereof with "clean cut" wounds. Thus, the trial court did not abuse its discretion in allowing Officer Tanner's testimony.

*Affirmed.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GRAY, J., retired superior court justice, and MCHUGH and GROFF, JJ., superior court justices, sat by special assignment pursuant to RSA 490:3; all who sat concurred.