Strafford
No. 2001-049

AGNES HODGDON

v.

FRISBIE MEMORIAL HOSPITAL & a.

December 11, 2001

*Law Offices of Brian T. Stern, P.A.*, of Dover (*Brian T. Stern* on the brief and orally), for the plaintiff.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert J. Meagher* on the brief and orally), for the defendants.

DUGGAN, J. In this medical malpractice case, the defendants, Frisbee Memorial Hospital and Geoffrey Stein, M.D., appeal from a jury verdict in favor of the plaintiff, Agnes Hodgdon. They argue that the Trial Court (*T. Nadeau*, J.) erred in: (1) allowing an ophthalmologist to testify as to the standard of care for an emergency room physician; (2) ruling that there was sufficient evidence to prove that Dr. Stein's alleged negligence was the proximate cause of the plaintiff's injury; (3) admitting into evidence a chart showing excerpts of a witness's testimony written by plaintiff's counsel as he examined the witness; (4) admitting into evidence certain documents from Dr. Stein's personnel file; and (5) allowing plaintiff's counsel in closing argument to say that the jury could find the doctor negligent for his failure to supervise the physician's assistant working with him in the emergency room. We affirm.

On Sunday, October 11, 1998, the plaintiff was brought to the emergency room at Frisbie Memorial Hospital for treatment of a blunt trauma injury to her right eye. Her eye was bruised and swollen shut. She was examined by Robbie Corriss, a physician's assistant and then by the emergency room physician, Geoffrey Stein. Dr. Stein diagnosed the injury as a subconjunctival hemorrhage with a differential diagnosis of hyphema. He discharged Mrs. Hodgdon instructing her to apply ice, to take Tylenol and to see her primary care physician on Monday and, if necessary, an ophthalmologist, on Tuesday. When she saw the ophthalmologist, he diagnosed a retrobulbar hemorrhage. Eventually, Mrs. Hodgdon lost vision in her right eye. At trial, she claimed Dr. Stein was negligent when he failed to properly diagnose and treat her condition, thereby causing her to lose vision, which otherwise she would not have lost. Following a jury verdict in her favor, the defendants filed this appeal.

*I. Expert Testimony*

■ The defendants first argue that the trial court erred in allowing the plaintiff's expert, Dr. Kuldip Vaid, an ophthalmologist, to give an expert opinion regarding the appropriate standard of care for an emergency room physician as required by RSA 507-E:2, I (1997). RSA 507-E:2, I(a) provides:

> In any action for medical injury, the plaintiff shall have the burden of proving by affirmative evidence which must include expert testimony of a competent witness or witnesses:

(a) The standard of reasonable professional practice in the medical care provider's profession or specialty thereof, if any, at the time the medical care in question was rendered.

Under Rule of Evidence 702, "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto . . . ." In deciding whether to qualify a witness as an expert, the trial judge must conduct an adequate investigation of the expert's qualifications. *Mankoski v. Bailey*, 137 N.H. 308, 313 (1993). Because the trial judge has the opportunity to hear and observe the witness, the decision whether a witness qualifies as an expert is within the trial judge's discretion. *See Bissett v. Renna*, 142 N.H. 788, 791 (1998). On appeal that decision will not be reversed unless the trial judge clearly abused her discretion. *Id.*

The trial court qualified the plaintiff's expert to testify "as an expert in ophthalmology and an expert in emergency room care as it pertains to ophthalmology only." The defendants contend that while Dr. Vaid is an ophthalmologist, he is not qualified to testify about emergency room care because he had no training as an emergency room physician. They specifically contend that Dr. Vaid is not qualified to testify whether an emergency room physician should have properly diagnosed the plaintiff's condition because his knowledge is more specialized than an emergency room physician's. Therefore, the defendants argue that Dr. Vaid does not have the knowledge or experience that would qualify him under Rule 702 to testify as to the "standard of reasonable professional practice in [Dr. Stein's] profession" as required by RSA 507-E:2, I(a). *See Bissett*, 142 N.H. at 792.

■ ■ The lack of specialization in a particular medical field does not automatically disqualify a doctor from testifying as an expert in that field. *Mankoski*, 137 N.H. at 312-13; *cf. Dikeou v. Osborn*, 881 P.2d 943, 947 (Utah Ct. App. 1994) (acknowledging preference for limiting experts to testifying within their own specialty, but holding medical professionals may testify as experts outside their specialty, upon establishing their knowledge about the relevant standard of care). Rather, "[a]n individual witness's qualifications must be determined on a case-by-case basis, not by application of a *per se* rule of exclusion or inclusion." *Mankoski*, 137 N.H. at 313. In this case, Dr. Vaid testified that he instructs emergency room physicians in the care of emergency ophthalmic conditions and could provide testimony as to what an emergency room physician is expected to do when presented with a patient in Mrs. Hodgdon's condition. Therefore, we cannot say the trial court abused its discretion in qualifying Dr. Vaid as

"an expert in emergency room care as it pertains to ophthalmology only" and permitting him to testify regarding the appropriate standard of care.

## II. Proximate Cause

The defendants next contend that the trial court erred in denying their motion for a directed verdict in which they claimed the plaintiff failed to establish the defendants' alleged negligence as the proximate cause of her injuries. A motion for a directed verdict "should be granted only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 800 (1996).

A plaintiff must prove "by affirmative evidence which must include expert testimony ... [t]hat as a proximate result [of the defendants' negligence], the [plaintiff] suffered injuries which would not otherwise have occurred." RSA 507-E:2, I(c). This statutory standard reflects the plaintiff's burden at common law to produce sufficient evidence that the defendants' negligence proximately caused her injury. *See Bronson*, 140 N.H. at 801. "Negligent conduct is a proximate or legal cause of harm, if the actor's conduct is a substantial factor in bringing about the harm." *Pillsbury-Flood v. Portsmouth Hospital*, 128 N.H. 299, 304 (1986) (quotations and brackets omitted).

The plaintiff's only expert, Dr. Vaid, testified that Mrs. Hodgdon's lost vision was the result of optic atrophy, which indicated a loss in functioning of her optic nerve. The emergency room records indicate that an examination of Mrs. Hodgdon's eye revealed a "large subconjunctival hemorrhage, which means there was blood in the white part of the eye, and it extended medially and laterally, so it was found on both sides of the pupil." Dr. Vaid testified that with most subconjunctival hemorrhages "you can see the limit of the hemorrhage." In this case, however, the emergency room records indicate the edge of the hemorrhage was not visible. An examination by an ophthalmologist, two days later, revealed "the hemorrhage went all the way around [the pupil]" and "a lot of the nerve [was] already gone." While she was at the emergency room, the pupil in the affected eye "was rather reactive to light, and equal to the opposite pupil." Therefore, Dr. Vaid concluded, "[c]hances are, her nerve was functioning and there was vision, ... pretty decent vision" at the time of the emergency room visit. He further testified, "[I]t's hard to [quantify] exactly how much, but by all means at least 50 percent of her nerve was ... working and probably more." When Dr. Vaid examined her three weeks later, however, her optic nerve had suffered significant damage and no

longer functioned properly. Finally, Dr. Vaid testified that had Dr. Stein properly diagnosed Mrs. Hodgdon's condition as a retrobulbar hemorrhage and immediately sought treatment to reduce the pressure caused by the hemorrhage, "she probably would have retained whatever vision" she had when she arrived at the emergency room.

■ Viewing this evidence in the light most favorable to the plaintiff, we cannot say that the sole reasonable inference that may be drawn from the evidence failed to establish that the defendants' negligence was the proximate cause of the damage to her optic nerve that resulted in her sight loss. Because the evidence did not so overwhelmingly favor the defendants such that no verdict for the plaintiff could stand, the trial court did not err in denying the defendants' motion for a directed verdict.

### III. Admissibility of Testimonial Evidence as an Exhibit

The third issue on appeal is whether the trial court erred by admitting into evidence as an exhibit a large piece of paper on which plaintiff's counsel wrote excerpts of the physician assistant's testimony as plaintiff's counsel cross-examined her. Plaintiff's counsel titled the paper "What Corriss told Stein." Underneath the heading he wrote a list of the information that the physician's assistant provided to the doctor before he examined the plaintiff. At the close of cross-examination, the plaintiff moved to admit the list as an exhibit. The defendants made a timely objection, which the court overruled. As an exhibit, the list went to the jury during its deliberations.

The trial judge has wide discretion in deciding which items admitted into evidence are to be brought into the jury room during deliberations. *See State v. Dugas*, 147 N.H. 62, 72 (2001) (holding no error in allowing jury to listen to audiotape and view videotape exhibits admitted into evidence because they are nontestimonial); *Brown v. Wiggin*, 59 N.H. 327 (1879) (holding no error in allowing jury to bring into jury room diagram referred to in testimony and used in examining witnesses). In this case, the challenged evidence is in effect a partial transcript of one witness's testimony. When the court allows the jury to have excerpts of a witness's testimony written by opposing counsel, there is a risk that the jury will unduly emphasize the written account of the testimony over the oral testimony. As one court explained, "[T]he triers of fact may place more emphasis on written rather than spoken words since the written words are readily before them physically while the spoken words uttered at trial can only be conjured up by memory." *Wright v. Premier Elkhorn Coal Co.*, 16 S.W.3d 570, 572 (Ky. Ct. App. 1999). For that reason, courts have taken a dim view of allowing a jury to have testimonial evidence during

deliberations that repeats or emphasizes portions of the witness's trial testimony. *See, e.g., Norfolk and Western Ry. Co. v. Puryear*, 463 S.E.2d 442, 444 (Va. 1995) (holding error to allow jury to have summary of parts of witnesses' testimony favorable to plaintiff). Here, the excerpts of the witness's testimony were written not by the witness but by counsel who, as plaintiff's advocate, understandably wanted to emphasize the parts of this witness's testimony that were favorable to his client. While it is permissible for counsel to write a summary of the witness's testimony during the trial, it is error to give the jury the summary to look at during its deliberations.

■ We must now determine whether the error requires reversal of the jury's verdict. Where the error is substantial, such that it could affect the verdict, the burden is on the plaintiff to show that the error did not affect the outcome. *Francoeur v. Piper*, 146 N.H. 525, 531 (2001); *see Cyr v. J.I. Case Co.*, 139 N.H. 193, 196-97 (1994). The summary in question is a list of Corriss's account of the information that she gave to Dr. Stein regarding the plaintiff's condition. Providing the jury with a summary of a witness's testimony could affect the jury's verdict, and therefore is a substantial error. While we agree with the defendants that the list is an incomplete transcript of her testimony, it is not misleading. The record supports the plaintiff's assertion that the list accurately reflects Corriss's testimony. Moreover, the jury in this case was allowed to take notes during trial and take these notes into the deliberation room. *See* SUPER. CT. R. 64-A; *cf. Allison v. Stalter*, 621 N.E.2d 977, 980 (Ill. App. Ct. 1993) (considering fact that jury was allowed to take notes when determining whether error to submit memorandum created by counsel in closing to jury). The court instructed the jury that while "the purpose of the notes [is] to refresh [their] memory on what was said, . . . [o]ne of [their] main concerns is the credibility of the witnesses, . . . [and therefore while deliberating they] should rely not on [their] notes, but on what [they've] heard and seen and observed, and [their] common sense." Because the jurors were allowed to take notes and because the trial court cautioned them not to rely upon written accounts, in this case it is unlikely that the jurors placed greater emphasis on the written summary than the oral testimony at trial. Therefore, although it was error to admit the challenged exhibit, the error was harmless.

*IV. Admissibility of Statements from Personnel File*

The defendants next argue that the trial court erred in allowing plaintiff's counsel to read from a letter in Dr. Stein's personnel file during his cross-examination of Dr. Stein. One of the disputed factual issues at trial was whether Dr. Stein consulted with Dr. Goldblatt, an ophthalmologist, before discharging the plaintiff. Dr. Stein testified that he called Dr. Goldblatt who advised him to discharge the plaintiff. The plaintiff, however, asserted that when Dr. Stein called Dr. Goldblatt, Dr. Goldblatt told him that he was not the physician on-call and that Dr. Stein should contact the physician who was on-call.

In an attempt to show why Dr. Stein might be reluctant to contact the on-call specialist, the plaintiff read the following excerpt from a letter to Dr. Stein from his supervisor contained in Dr. Stein's personnel file:

> Over the past three years, there has been a pattern of reluctance on your part to work anything other than your standard shift, six shifts per month. Your reluctance to work two days in a row, or, God forbid, two nights in a row, impacts upon the scheduling process as well as the schedule for your peers.
> I feel that I am stuck in the middle. I am charged with ensuring that there is adequate coverage of the emergency department during all hours, and from time to time, this requires assistance on an unscheduled basis.

Before the plaintiff's counsel read from the letter, the defendants objected and argued that this evidence was irrelevant. The court overruled the objection, and Dr. Stein responded by explaining the range of demands on his work schedule, the friction between himself and the former director of the emergency room, and the shortage of physicians to staff the emergency room at that time. Plaintiff's counsel thereafter questioned him about another sentence in the letter that suggested Dr. Stein's work schedule had been changed at his request so that he could watch the Super Bowl. The defendants again objected, and the trial judge sustained this objection.

Evidence is relevant if it has "any tendency" to prove a fact that is "of consequence." N.H. R. Ev. 401. The evidence from Dr. Stein's personnel file was irrelevant. The incidents described apparently occurred a year earlier and simply had no bearing on the contents of the conversation between Dr. Stein and Dr. Goldblatt. Whether Dr. Stein was or was not reluctant to work extra shifts was unrelated to what was said on the phone a year later.

■ The erroneous admission of this evidence does not, however, require reversal. *See Francoeur*, 146 N.H. at 532. The evidence was wholly unrelated to the core issues in the case. In addition, Dr. Stein's lengthy answer explaining the contents of the letter blunted the irrelevant information that plaintiff's counsel injected into the case. Finally, the trial judge quickly ended the plaintiff's foray into this area, and no mention was made of this evidence in closing argument. Although admitting this evidence was a substantial error, the record supports the plaintiff's assertion that the error was harmless.

### V. Plaintiff's Closing Argument

Finally, the defendants assert that the trial court allowed the plaintiff to argue improperly in closing that the physician's assistant, who had been dismissed from the case, was at fault, thereby impermissibly implying that the remaining defendants should be responsible for her alleged fault. At the close of the plaintiff's case, the court dismissed the case against the physician's assistant after finding that the plaintiff's only expert was not qualified to offer opinion evidence as to the appropriate standard of care for a physician's assistant. The defendants objected when the plaintiff's counsel in closing argued:

> And it's some mystical experience that the doctors and hospital [are] in control of. And do they control this situation? Did they do what had to be done, both Robbie Corriss and Dr. Stein. Dr. Stein has to supervise and direct Robbie Corriss, so let's look at what took place, and was that an adequate examination.

■ The defendants contend that the argument was improper because Corriss had been dismissed as a defendant and the plaintiff did not specifically allege Dr. Stein was negligent on a separate theory of *respondeat superior*. The essence of the plaintiff's argument, however, was that Dr. Stein himself was responsible because he did not make sure that Corriss completed all the examinations necessary for him to make a proper diagnosis. Further, the trial court reminded the jury that "the case against Miss Corriss ha[d] been dismissed" and explained that the hospital could be liable only for Dr. Stein's alleged negligence, but not based on any alleged conduct by Corriss. Therefore, any implication that the defendants may be liable based on Corriss' negligence was cured by the court's

instruction. Under these circumstances, any error or prejudice was harmless and, therefore, we will not disturb the jury's verdict. *See Blais v. Town of Goffstown*, 119 N.H. 613, 619-20 (1979).

*Affirmed.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.