Grafton
No. 98-673

## MARIA EMERSON

v.

## JOHN BENTWOOD, M.D.

April 9, 2001

*Edward B. Mulligan, IV*, of Gilford, by brief and orally, for the plaintiff.

*Orr and Reno, P.A.*, of Concord (*William L. Chapman* and *Gayle M. Braley* on the brief, and *Mr. Chapman* orally), for the defendant.

BARRY, J., superior court justice, specially assigned under RSA 490:3. The plaintiff, Maria Emerson, appeals the Superior Court's (*Fitzgerald*, J.) grant of the motion of the defendant, John Bentwood, M.D., for a directed verdict in her medical negligence case. We reverse and remand.

The plaintiff suffered from intermittent pelvic pain from approximately 1977 until March 2, 1994. The defendant is a surgeon who was brought in as a consultant by the plaintiff's physician, Dr. Stephen D. Elgert. The defendant reviewed reports of Dr. Elgert's examination of the plaintiff, laboratory data, a prior pelvic ultrasound, and hospital records including those of the plaintiff's previous hospitalizations at Speare Memorial.

The defendant's initial diagnosis after examining the plaintiff on February 28, 1994, was that the plaintiff had resolving pelvic inflammatory disease, a uterine polyp, and probable adhesions related to former surgery. The defendant testified that he recommended either a continuation of antibiotic therapy or an exploration and probable hysterectomy following a CT-scan. The plaintiff, however, testified that she was not given an option with respect to the hysterectomy.

Subsequently, a CT-scan was performed on March 1, 1994, which showed a uterine enlargement. On March 2, 1994, the defendant performed a total hysterectomy following exploratory surgery. He removed the plaintiff's uterus, fallopian tubes, and ovaries.

At trial, the plaintiff presented the videotaped deposition testimony of her expert witness, Dr. Henry Klapholz. Dr. Klapholz testified that the defendant deviated from the standard of care when he performed the hysterectomy. He maintained that far less invasive and risky ways existed to make a diagnosis than the removal of the plaintiff's organs.

At the close of the plaintiff's case, the court granted the defendant's motion for a directed verdict. The trial judge gave two reasons for granting the defendant's motion: (1) Dr. Klapholz's enunciation of the standard of care sprang from a flawed premise; and (2) even assuming there was a deviation from the standard of care, Dr. Klapholz's testimony failed to establish causation. The judge noted that he had found Dr. Klapholz's testimony so confusing and inconsistent in a prior case that the trier of fact could not

determine the applicable standard of care. He added that "[w]hen the court hears such confused testimony, the obligation to act as gatekeeper to insure a minimum level of competence for the trier of fact is heightened."

The plaintiff moved for reconsideration, urging that it was "unfair to the plaintiff for the court to have based any part of its opinion on a previous ruling involving a completely different case with different facts and different injuries." In denying the motion, the court noted "that it did not 'rely' on prior experience with plaintiff's expert in reaching its conclusion, but only cited to that experience to buttress the compelling need to insure that expert testimony presented to the jury is competent and reliable in accordance with the rule of *State v. Cressey*, 137 N.H. 402 (1993)." We accept the trial court's explanation that it only referenced its prior experience with the same expert witness to emphasize its general concerns about the reliability of expert testimony.

On appeal, the plaintiff argues that the trial court erred in granting the defendant's motion because: (1) the plaintiff's expert testified that the defendant deviated from the applicable standard of care; (2) his testimony "clearly established the causal link between the defendant's negligence and the plaintiff's wrongful hysterectomy"; and (3) the trial court's conclusion that the expert's testimony was unreliable was an abuse of discretion.

A motion for directed verdict "should be granted only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." *Thompson v. The H.W.G. Group*, 139 N.H. 698, 699 (1995) (quotation omitted). The trial court may not weigh the evidence or judge the credibility of witnesses. *Arthur v. Holy Rosary Credit Union*, 139 N.H. 463, 465 (1995). The trial court should deny the motion for a directed verdict unless "the court can affirmatively determine that the plaintiff is not entitled to any relief on the evidence presented." 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 48.15, at 333 (1998).

RSA 507-E:2 defines the plaintiff's burden of proof in an action for medical negligence. The statute requires the plaintiff to prove by competent expert testimony:

> (a) The standard of reasonable professional practice in the medical care provider's profession or specialty thereof, if any, at the time the medical care in question was rendered; and

(b) That the medical care provider failed to act in accordance with such standard; and

(c) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

RSA 507-E:2, I (1997). In addition, "an expert's testimony must rise to a threshold level of reliability to be admissible under New Hampshire Rule of Evidence 702." *State v. Cressey*, 137 N.H. at 405.

The trial court found that the plaintiff failed to produce "competent expert evidence from which a rational trier of fact could conclude that the claimed deviation from the standard of care was, in fact, the legal cause of the claimed damages." Dr. Klapholz, however, offered the following testimony regarding the standard of care:

Q. Finally, Doctor, do you have an opinion based upon reasonable medical probability whether performing this total hysterectomy with her symptoms by Dr. Bentwood in 1994 was a deviation from the standard of medical care?

A. I do.

Q. And what is that?

A. I think under the circumstances that occurred here with the data that was available, I think this is a deviation from the standard of care in this time, 1996, at the time this was performed.

Q. And the reason for that is what?

A. Well, the reason is simple. There are other — there are other techniques which are available now, commonly available, that can make a diagnosis or can attempt to make a diagnosis that are far less invasive, far less risky and don't require the removal of organs. And it may turn out that you find something that requires further surgery. But the standard of care in 1996, and it's not that long ago, is to make a diagnosis first before you attempt to remove an organ.

Q. Is that the same standard of care that existed throughout the nineties, Doctor?

A. Yes. That's the last ten years, I think it's safe to say.

In the preceding dialogue, Dr. Klapholz rendered an opinion as to whether or not the defendant deviated from the standard of care. He further posited that "[o]ffering [the plaintiff] a hysterectomy without any additional options . . . in and of itself [was] a deviation from the standard [of care]."

 Dr. Klapholz explained that because far less invasive means existed to diagnose the plaintiff's condition, they should have been utilized first. He also emphasized the importance of a firm diagnosis before undertaking treatment. The defendant admitted at trial that "part of the reason for performing this hysterectomy was to arrive at a more definitive diagnosis." We therefore conclude that Dr. Klapholz provided an adequate foundation for his opinion that the defendant deviated from the standard of care by performing a hysterectomy, given the plaintiff's symptoms, when other less invasive means of diagnosis were available.

We next turn to the question of causation. Dr. Klapholz testified that the defendant incorrectly diagnosed the plaintiff's condition as pelvic imflammatory disease. Further, Dr. Klapholz testified that had the defendant employed alternative diagnostic procedures, such procedures would have ruled out pelvic inflammatory disease. Moreover, he saw no evidence that a hysterectomy was required for the treatment of what was in the plaintiff's record at the time and that he considered a hysterectomy premature.

The trial judge, however, concluded his order for a directed verdict by stating that the fact that Dr. Klapholz was unable to identify the probable source of the plaintiff's pain, coupled with the fact that following the procedure the pain ceased, left the jury "to speculate as to whether the hysterectomy was necessary for the treatment of the symptoms presented by plaintiff." In support of this conclusion, the trial court referenced the following testimony:

Q. So without knowing the cause of her pain, you can't say that the total hysterectomy was not necessary, can you?

A. I think it's — I think it's unlikely given all the possibilities that could cause pain that that would be a necessary procedure.

Whether the hysterectomy was necessary was an issue for the jury to resolve. Dr. Klapholz's testimony goes to the weight of the evidence, a matter strictly within the province of the jury to determine. The jury was no longer free to make that determination after the judge rendered his directed verdict. As Dr. Klapholz postulated at the close of his deposition, the fact that the plaintiff's

pain ceased after her hysterectomy does not mean that the plaintiff's uterus was the source of the pain. In fact, the final diagnosis in the plaintiff's discharge stated that the pelvic pain was of undetermined etiology.

■ On appeal, the plaintiff argues that she "met her burden of proof under RSA 507-E:2 by presenting reliable expert testimony which clearly established the causal link between the defendant's negligence and the plaintiff's wrongful hysterectomy." The burden is on the plaintiff to prove that she "suffered injuries which would not otherwise have occurred" as a proximate result of the defendant's negligence. RSA 507-E:2, I(c). The plaintiff must establish the proximate cause between the negligence and injury by expert testimony. *Martin v. Wentworth-Douglass Hosp.*, 130 N.H. 134, 136 (1987). The quantum of evidence required to survive a directed verdict is only "enough to warrant the conclusion . . . that the causal link probably existed." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 802 (1996) (quotation omitted).

■ Dr. Klapholz repeatedly contended throughout his deposition that the defendant's conduct deviated from the standard of care when the defendant performed a hysterectomy given the plaintiff's symptoms. The plaintiff's alleged injury was the loss of her reproductive organs as a result of a wrongful hysterectomy. In other words, the expert testified that the plaintiff "suffered injuries which would not otherwise have occurred." RSA 507-E:2, I(c). No recitation of "specific words or phrases mirroring statutory language" is necessary to establish causation. *Bronson*, 140 N.H. at 804.

"[I]f competent expert medical testimony is adduced from which the jury can fairly and reasonably conclude that but for a defendant's negligence an injury probably would not have occurred, the plaintiff has met [her] burden." *Id.* The plaintiff offered sufficient expert testimony to show a causal link between the defendant's alleged negligence and the plaintiff's alleged injury. *Cf. St. Pierre v. Elgert*, 145 N.H. 620, 624-25 (2000). To conclude otherwise could conceivably render a plaintiff remediless whenever a physician acted prematurely and without a definitive diagnosis.

Finally, the plaintiff contends that the trial court's finding that the testimony of Dr. Klapholz was unreliable constituted an abuse of discretion. Whether particular expert testimony is reliable rests within the sound discretion of the trial court. *See Chase v. Mary Hitchcock Mem. Hosp.*, 140 N.H. 509, 510 (1995). The trial court's discretion as to the admission or exclusion of such evidence is wide, and we will not reverse its ruling absent a clear abuse of discretion.

*See Johnston v. Lynch*, 133 N.H. 79, 88 (1990). "We will uphold the trial court's ruling on a motion for directed verdict when the record supports the conclusion that the trial court did not abuse its discretion in determining that no rational juror could find for the non-moving party." *Goodwin v. James*, 134 N.H. 579, 583 (1991) (quotation and brackets omitted).

The trial court judge found the expert's testimony confusing and gave the following example in his order for a directed verdict:

> [W]hen asked a rather straight forward question:
> "Is the use of a laparoscope in treatment hindered in your opinion by the presence of adhesions or prior surgeries?"
> Dr. Klapholz answers: "No. It may be. It could . . ."

In his testimony, however, Dr. Klapholz clearly stated: (1) the standard of care "is to make a diagnosis first before you attempt to remove an organ"; (2) the defendant deviated from that standard of care performing the hysterectomy "with the data that was available" by not using "other techniques . . . commonly available, that can make a diagnosis that are far less invasive, far less risky and don't require the removal of organs"; and (3) as a result the plaintiff underwent a total hysterectomy when it was "unlikely given all the possibilities that could cause the pain that [a hysterectomy] would be a necessary procedure." Moreover, the beginning of the testimony the trial court cited took Dr.Klapholz's answer out of context. In fact, Dr. Klapholz clarified this answer by explaining that while the laparoscopic view might be obstructed by adhesions from prior surgeries, prior surgery was never a reason not to do a laparoscope first.

■ We therefore hold that the trial judge abused his discretion by concluding that: (1) Dr. Klapholz's testimony was so confusing and inconsistent that the trier of fact could not determine the applicable standard of care; and (2) the plaintiff "produced no competent expert evidence from which a rational trier of fact could conclude that the claimed deviation from the standard of care was, in fact, the legal cause of the claimed damages."

The expert's testimony was sufficient for a rational trier of fact to conclude that the defendant should have employed less invasive measures before resorting to a hysterectomy and that said deviation from the standard of care resulted in the plaintiff's injury. "Under our jury system, reasonably disputable issues of fact are to be resolved by the jury." *Faust v. General Motors Corp.*, 117 N.H. 679,

684 (1977) (quotation omitted). We accordingly reverse the trial court's directed verdict and remand for a new trial.

*Reversed and remanded.*

DUGGAN, J., concurred; MOHL, O'NEILL and HAMPSEY, JJ., superior court justices, specially assigned under RSA 490:3, concurred.