NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2023-0740
Citation: State v. Raymond, 2025 N.H. 30

THE STATE OF NEW HAMPSHIRE

v.

MATTHEW RAYMOND

Argued: April 15, 2025
Opinion Issued: July 15, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.

Paul Borchardt, staff attorney, New Hampshire public defender, of Nashua, on the brief and orally, for the defendant.

MACDONALD, C.J.

[¶1] The defendant, Matthew Raymond, appeals his convictions, following a jury trial in the Superior Court (Edwards, J.), on four counts of second-degree assault, see RSA 631:2, I(f) (2016), six counts of simple assault-domestic violence, see RSA 631:2-b, I(a) (2016), one count of false

imprisonment, see RSA 633:2 (2016), and one count of misdemeanor criminal mischief, see RSA 634:2, I, II-a (2016 & Supp. 2024). On appeal, the defendant argues that the trial court erred in admitting the testimony of Dr. Scott Hampton, an expert in the field of intimate partner violence, because his testimony was not reliable under RSA 516:29-a (2021). We conclude that the court did not err in admitting Hampton's testimony. Accordingly, we affirm.

I.     Background

[¶2] The following facts are supported by the record. In May 2022, the defendant and the victim were in a relationship and lived together. In May and June 2022, the defendant assaulted the victim on several occasions including four instances of strangulation. Despite the assaults, the victim did not seek medical attention, and did not report the incidents to the police until August 2022. Subsequently, the defendant was charged with five counts of second-degree assault, seven counts of simple assault-domestic violence, one count of false imprisonment, and one count of misdemeanor criminal mischief.

[¶3] Before trial, the State informed the defendant that it intended to call Hampton as an expert witness in the field of intimate partner violence. The defendant moved to exclude Hampton's testimony. The defendant argued, in part, that Hampton's testimony was unreliable under RSA 516:29-a. The State objected, proffering that Hampton would not testify about the specific facts of the case but instead would generally explain the counterintuitive behavior of domestic violence victims. The State argued that Hampton's testimony was reliable given his credentials and his work with domestic violence victims and offenders over the course of more than two decades.

[¶4] The Trial Court (Houran, J.) held an evidentiary hearing on the motion. Hampton testified that he had not read any of the case's discovery, and intended only "to offer general education to fact finders about the dynamics of domestic and sexual violence, so that they are better prepared to understand the rest of the testimony and arrive at their own conclusions." He testified that he has a doctorate in clinical psychology and focused his studies on domestic and sexual violence. He developed and ran a batterers' intervention program during graduate school. He has participated in annual continuing education in the field of domestic and sexual violence. In 1993, he developed a batterers' intervention program in New Hampshire at a community mental health center, which operated until 2000 when he began offering intervention services as part of his ongoing private practice. Since 2007, he has run domestic and sexual violence support groups at a county jail. He has served on a number of domestic violence-related committees and published twenty-five articles on the topic, six of which were peer reviewed. He has testified as an expert in approximately fifty court cases.

2

[¶5] The trial court denied, in part, the defendant's motion to exclude, admitting the testimony while limiting it to topics relevant to the case. The court found Hampton "qualified to offer expert opinions in the field of intimate partner violence." The Trial Court (Edwards, J.) conducted a four-day jury trial in October 2023. The State's witnesses included the victim, a mutual friend of the victim and the defendant, a police officer, a detective, an expert in strangulation, and Hampton. The jury found the defendant not guilty on two charges, and convicted him on the remaining charges. This appeal followed.

II.     Analysis

[¶6] On appeal, the defendant argues that the trial court erred in permitting Hampton to testify. The defendant asserts that Hampton's testimony "fail[s] every factor listed in RSA 516:29-a." Further, the defendant argues that State v. Keller, 176 N.H. 730 (2024), 2024 N.H. 42, "compels the reversal of [his] convictions." (Capitalization omitted.) We conclude that the defendant has not demonstrated reversible error.

[¶7] The decision to admit expert testimony rests, in the first instance, within the sound discretion of the trial court. Keller, 176 N.H. at 738, 2024 N.H. 42, ¶22. We will reverse the trial court's ruling only if the defendant demonstrates that it was untenable or unreasonable to the prejudice of his case. Id. When applying this standard, our task is not to determine whether we would have found differently, but only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it. Id.

[¶8] In exercising its discretion, a trial court is guided by standards set forth in New Hampshire Rule of Evidence 702 and a statute governing the testimony of expert witnesses, RSA 516:29-a. The standards in the Rule and the statute overlap. Both draw heavily on concepts set forth in federal law regarding the admission of expert testimony. See, e.g., N.H. R. Ev. 702, 2016 NHRE Update Committee Note (referencing the Federal Rules of Evidence 702 Advisory Committee Notes for guidance); N.H. R. Ev. 102 (noting that decisions of federal courts involving the Federal Rules of Evidence "may be helpful in analyzing problems and issues that arise under these rules").

[¶9] When applying Rule 702 and RSA 516:29-a, the trial court functions only as a gatekeeper, ensuring a methodology's reliability before permitting the fact-finder to determine the weight and credibility to be afforded an expert's testimony. See Keller, 176 N.H. at 737, 2024 N.H. 42, ¶21. "Although the proponent of expert testimony bears the burden of proving its admissibility, the burden is not especially onerous because Rule 702 has been interpreted liberally in favor of the admission of expert testimony." Id. (quotation omitted). "Indeed, the overall purpose of Rule 702 and RSA 516:29-a is to ensure that a

fact-finder is presented with reliable and relevant evidence, not flawless evidence." Id. Thus, as long as an expert's testimony rests upon reliable grounds, it should be tested by the adversary process, rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. See id.

[¶10] New Hampshire Rule of Evidence 702 authorizes the trial court to admit expert testimony. Id. at 736, 2024 N.H. 42, ¶19. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

N.H. R. Ev. 702.

[¶11] Rule 702 is nearly identical to its federal analog, Federal Rule of Evidence (FRE) 702. Compare N.H. R. Ev. 702, with Fed. R. Evid. 702. The text of each makes explicit reference to a witness's "experience" and "other specialized knowledge." N.H. R. Ev. 702; Fed. R. Evid. 702. As the FRE Advisory Committee Notes state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. In turn, the notes to the New Hampshire version of Rule 702 point to the FRE Advisory Committee Notes and state that "all 'specialized' knowledge is covered by this Rule and not simply knowledge confined to 'scientific' and 'technical' fields." N.H. R. Ev. 702 Reporter's Notes.

[¶12] Before trial, the State proffered that Hampton would provide the jury with general education on topics related to domestic violence, such as the gradual progression of abusive relationships and the seemingly counterintuitive behavior of victims. The State asserted that Hampton would "not be testifying on the specific facts of this case." Hampton testified at the motion hearing that the basis for his general education testimony was his work

with thousands of domestic violence victims and offenders over the course of his twenty-year career.

[¶13] We conclude that Hampton's testimony with respect to the progression of abusive relationships and the counterintuitive behavior of victims was based on his experience in the field of domestic violence and is "specialized knowledge" within the meaning of Rule 702. Further, his direct experience with thousands of domestic violence victims over two decades satisfies the Rule's requirements with respect to "sufficient facts or data," N.H. R. Ev. 702(b), and reliable "principles and methods," N.H. R. Ev. 702(c). See State v. Pelletier, 149 N.H. 243, 251-52 (2003) (affirming the trial court's determination that a physician's expert testimony was reliable given the physician's extensive background "providing child abuse evaluations for detecting and investigating child sexual abuse in hundreds of cases"); United States v. Alzanki, 54 F.3d 994, 1006 (1st Cir. 1995) (upholding admission of testimony that the alleged victim's response was "consistent with the behavior of abuse victims generally" based on expert's general research and personal interaction with hundreds of abuse victims). Because Hampton's proffered general education testimony was not case-specific, the trial court did not need to determine whether Hampton "reliably applied the principles and methods to the facts of the case." N.H. R. Ev. 702(d); see Fed. R. Evid. 702 advisory committee's note to 2000 amendment (emphasizing that "it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case").

[¶14] The defendant focuses his argument on RSA 516:29-a. That statute provides:

> I. A witness shall not be allowed to offer expert testimony unless the court finds:
>
> > (a) Such testimony is based upon sufficient facts or data;
> >
> > (b) Such testimony is the product of reliable principles and methods; and
> >
> > (c) The witness has applied the principles and methods reliably to the facts of the case.
>
> II.    (a) In evaluating the basis for the proffered expert testimony, the court shall consider, if appropriate to the circumstances, whether the expert's opinions were supported by theories or techniques that:

(1) Have been or can be tested;

(2) Have been subjected to peer review and publication;

(3) Have a known or potential rate of error; and

(4) Are generally accepted in the appropriate scientific literature.

(b) In making its findings, the court may consider other factors specific to the proffered testimony.

RSA 516:29-a (2021).

[¶15] Section I of the statute restates a portion of Rule 702. To the extent Rule 702's requirements are satisfied, as they are here, Section I of RSA 529:16-a is also satisfied. Section II codifies the four factors from Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-94 (1993), that we applied in Baker Valley Lumber v. Ingersoll-Rand, 148 N.H. 609, 614, 616 (2002).

[¶16] The defendant argues that Hampton's testimony does not satisfy the factors found in RSA 516:29-a, II. However, "one or more of these factors is relevant only 'if appropriate to the circumstances.'" Baxter v. Temple, 157 N.H. 280, 285 (2008) (quoting RSA 516:29-a, II(a)). "[T]he Daubert factors 'do not constitute a definitive checklist or test' that must be applied in all circumstances. Rather, the factors must be applied with flexibility and in light of the proffered testimony." Id. at 299 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quotation and citation omitted)). Accordingly, the RSA 516:29-a, II(a) factors need not always be considered to determine the reliability of expert testimony. See id. at 284 ("[T]he list of Daubert factors are 'meant to be helpful, not definitive. Indeed, those factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged.'" (quoting Kumho Tire, 526 U.S. at 151)).

[¶17] Contrary to the defendant's argument, given Hampton's experience-based, general education testimony, it was not "appropriate to the circumstances" to apply the RSA 516:29-a, II(a) factors in this case. RSA 516:29-a, II(a). Instead, consistent with RSA 516:29-a, II(b), in making its determination that Hampton's testimony met the threshold of reliability, the trial court sustainably exercised its discretion in considering Hampton's extensive training and experience in the field of domestic violence and his extensive publication on the topic. See RSA 516:29-a, II(b) ("In making its findings, the court may consider other factors specific to the proffered

testimony."); see also N.H. R. Ev. 702 Reporter's Notes ("the Rule permits and perhaps encourages the use of experts not only to form opinions but to provide general information in fields of their expertise so that the ultimate trier of fact can form his or her own opinions"). Accordingly, we hold that the State demonstrated that Hampton's testimony was reliable under RSA 516:29-a, and thus the trial court did not err in admitting the testimony.

[¶18] Our conclusion is consistent with those of other courts considering the reliability of similar testimony under Daubert. See United States v. Halamek, 5 F.4th 1081, 1086-89 (9th Cir. 2021) (concluding expert testimony on the practice of "grooming" children for sexual abuse based on the expert's experience "interviewing over 3,000 victims of child abuse, the majority of whom were victims of child sexual abuse," was reliable and properly admitted); United States v. LaVictor, 848 F.3d 428, 443-44 (6th Cir. 2017) (noting that "[c]ourts have consistently allowed expert witnesses to testify concerning domestic violence even in circumstances where the research is not supported by exhaustive statistical evidence" and upholding admission of expert testimony "based on insight gleaned from her personal experience interviewing victims of domestic abuse"); United States ex rel. Miller v. Bill Harbert Intern. Const., 608 F.3d 871, 893-95 (D.C. Cir. 2010) (concluding that the trial court did not abuse its discretion in admitting the testimony of an expert witness who had no direct knowledge of the facts of the case and had not examined the evidence, but instead testified generally about cartel economics); United States v. Simmons, 470 F.3d 1115, 1122-23 (5th Cir. 2006) (testimony regarding rape-victim behavior was properly admitted even if developed for therapeutic rather than forensic purposes: "[b]ecause there are areas of expertise, such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to determine whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case" (quotation and citation omitted)); Alzanti, 54 F.3d at 1006; State v. Salazar-Mercado, 325 P.3d 996, 997, 1001 (Ariz. 2014) (upholding the admission of expert testimony that purported to explain "behaviors commonly exhibited by child sexual abuse victims").

[¶19] The defendant further argues that Keller requires reversal in this case. Contrary to the defendant's argument, the general education testimony at issue in this case is distinguishable from the testimony at issue in Keller. In Keller, a forensic toxicology expert opined on whether the defendant exhibited signs and symptoms of impairment based on her review of a variety of types of information including discovery materials, blood test results, and blood sample collection information, combined with her experience, training, and education. Keller, 176 N.H. at 738, 2024 N.H. 42, ¶24. We applied the RSA 516:29-a, II(a) factors to the expert's methodology and concluded that the trial court unsustainably exercised its discretion in finding the methodology reliable "and,

therefore, erred in allowing her to opine that the defendant 'demonstrated signs and symptoms of impairment that are consistent with' the use of drugs found in his system, which could have impaired his driving." Id. at 741, 2024 N.H. 42 ¶32.

[¶20] The circumstances of Hampton's testimony differ from the circumstances of the expert's testimony in Keller. The expert in Keller applied her methodology to opine on the facts of the case. The RSA 516:29-a, II(a) factors were well-suited to evaluate the reliability of that methodology. Thus, in Keller, it was "appropriate to the circumstances" to apply the RSA 516:29-a, II(a) factors to determine the reliability of the expert's testimony. RSA 516:29-a, II(a). In contrast, in the circumstances of this case, as described above, the trial court was free to determine the reliability of Hampton's general education testimony by considering his extensive experience in the field. See Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."). Accordingly, Keller does not compel us to reverse the trial court in this case.

[¶21] In sum, the defendant has not demonstrated that the trial court's ruling admitting Hampton's testimony was untenable or unreasonable to the prejudice of his case. Accordingly, we affirm.

Affirmed.

DONOVAN and COUNTWAY, JJ., concurred.